# IN THE COURT OF APPEALS OF IOWA

No. 23-0578
Filed June 21, 2023

**IN THE INTEREST OF T.N.,**
**Minor Child,**

**D.N., Mother,**
　　Appellant.

_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Misty White, Sigourney, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Tabor and Greer, JJ.

**GREER, Judge.**

In 2021, months after the mother's rights to an older child—H.G.—were terminated following a two-and-a-half-year child-in-need-of-assistance (CINA) proceeding, the mother gave birth to T.N. The mother's rights to H.G. were terminated after both she and H.G. tested positive for methamphetamine and due to the Iowa Department of Health and Human Services' concerns about the condition of the family home. For similar reasons, the mother's rights to T.N. were terminated in 2023, which the mother appeals—she argues the juvenile court should have granted her an extension and that termination is not in the child's best interests partly because of the bond between the mother and the child. Because an extension would be inappropriate and termination serves the child's best interests, we affirm.

In February 2022, the department went to the family's home and found "mouse droppings, cockroaches, a sink full of dirty dishes, garbage on the floor, and a mouse running across the home." There were also mice in the child's play pen. A founded child-abuse assessment was completed, and the mother agreed to a safety plan with the child residing in a family friend's home while the mother addressed the home's conditions. The child returned to the mother's home in March. But, by June, the home's conditions had deteriorated once more, and the child's crib was full of food and clothing; so, another safety plan was developed. When it was determined the mother was not following the safety plan, the child was adjudicated CINA[1] and placed with fictive kin or in foster care.

---

[1] The father's parental rights were also terminated. He has been incarcerated since the child's CINA adjudication and does not appeal.

In December 2022, the mother and her paramour moved into a two-bedroom house. When service providers conducted a scheduled home visit in January 2023 ahead of the February termination hearing, they noted the mother and her paramour lived in one room and the family dog lived in the other. The dog's room, which was used in lieu of a kennel, was where the dog relieved itself during the day and it smelled strongly of urine and feces. The mother testified that this second room is where the child would sleep if returned to her care, though she did not have a bed for the child. The home's furnace was not working, and they were using baseboard heaters as a short-term solution.[2] There were piles of clothes and empty alcohol bottles on the floor, and the bathroom's toilet "had feces all over the rim . . . [and] was extremely dirty and needed disinfected." The department also raised concerns about the mother's paramour, who had previously pled guilty to two-counts of child endangerment. Service providers repeatedly requested the mother fill out a background check form for the paramour, which she did not do. Providers asked for the paramour to be present during their scheduled home visit before the termination hearing so they could go over the background check forms, but he was not there when they arrived. To the mother's credit, she was employed, participated in visitation,[3] and had no continued substance-use concerns.

At the termination hearing, service providers reported the child was bonded with and attached to the foster family. For her part, the mother asked for six

---

[2] Service providers reported it was sixty-five degrees in the home.

[3] Early on in the case, the mother struggled to engage with visitation and would often leave early. But, by December 2022, visitation was more consistent. All visitation was supervised.

additional months to work toward reunification. The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(g) and (h) (2023). We review the termination of parental rights de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The mother first argues the juvenile court should have granted her additional time to work toward reunification. In order to grant a six-month extension, the juvenile court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The juvenile court could not do that in this case—the mother had received services from 2018 and the condition of her home has been a persistent issue across multiple homes. According to her psychological evaluation completed in January 2023, she "ha[d] learned little from her social services contact" and "without continuing supervision, is apt to allow her home environment to deteriorate to its former state." The evaluation went on to state "[the mother's] history suggests an ability to conform for short periods of time followed by a more consistent pattern of lack of motivation." We cannot say, based on this record, that six months would be enough time for the mother to not only sanitize the conditions of the home, but to show the ability to maintain those conditions, especially given the length of time she has already had to do so without sustained improvement. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency. Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the

parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citations omitted)); *P.L.*, 778 N.W.2d at 41 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."). So, we uphold the juvenile court's decision not to grant additional time toward reunification.

We turn to the child's best interests, which we feel are served by termination. Courts "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). In this case, the mother has not demonstrated the ability to maintain sanitary housing. Moreover, the mother has not ensured that the individuals in her home are safe for her child to be around; while "we do not require compliance for compliance's sake" from parents seeking reunification, *In re G.B.*, No. 22-0439, 2022 WL 1657190, at *5 (Iowa Ct. App. May 25, 2022), the mother's failure to comply with providing the necessary paperwork for her paramour's background check or recognize the issue his criminal past poses makes us question her protective capacity. And, though the mother points to her positive visitation history, this does not outweigh the danger of placing a toddler back into an unsuitable home. The child, however, has bonded with the foster home and is receiving the care necessary to ensure his future development. Termination is in the child's best interests.

The mother makes reference to the bond between her and the child. Insofar as she is referencing the permissive exception to termination in Iowa Code section 232.116(3)(c), which allows the court not to terminate parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship," she bears the burden to establish an exception to termination. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). And while the record mentions a bond between the mother and the child, she has provided no evidence that their bond overcomes the need for termination.

Because a six-month extension would not be appropriate and termination is in the child's best interests, we affirm.

**AFFIRMED.**